# EXHIBIT D

# ESTOPPEL AND CONSENT

August 20, 2020

Banco Popular de Puerto Rico
 as Administrative Agent
Popular Center, 6th Floor
208 Ponce de Leon Avenue
San Juan, Puerto Rico
Attention: Corporate Banking Division

PCC Sub-CDE 13, LLC
c/o Popular Community Capital, LLC
PO Box 362708 (Mail Code 734)
San Juan, PR  00936-2708
Attention:  Cristina Domínguez

      Re:    El Coqui Landfill Estoppel and Consent Certificate.

Ladies and Gentlemen:

      Reference is hereby made to that certain Credit Agreement to be entered into (the "**Credit Agreement**"), by and among Biomass Green Fuels LLC, a Puerto Rico limited liability company ("**Biomass**"), the lenders which from time to time are parties thereto (the "**Lenders**") and Banco Popular de Puerto Rico, as administrative agent (the "**Administrative Agent**"). Pursuant to the Purchase Agreement (as hereinafter defined), Biomass is the exclusive buyer of Landfill Gas (as defined in the Purchase Agreement) sold by the undersigned and generated at the Landfill (as defined in the Purchase Agreement). Biomass is also the lessee under the Site Lease (as hereinafter defined) pursuant to which the undersigned, as lessor, leased the Sites (as defined in the Site Lease) to Biomass that are located at the Landfill.

      The undersigned is aware that Biomass intends to grant a first priority lien and security interest in and to substantially all of Biomass' assets, including the pledge and assignment in favor of the Administrative Agent, for the benefit of the Lenders, of all rights, title and interests of Biomass under (i) that certain Landfill Gas Sale and Purchase Agreement executed by the undersigned and Biomass on December 28, 2018, as amended by that certain First Amendment to Landfill Gas Sale and Purchase Agreement executed by the undersigned and Biomass on July 19, 2019 (together, the "**Purchase Agreement**"); and (ii) that certain Deed of Lease effective as of March 28, 2019 and executed by the undersigned and Biomass on April 10, 2019, authenticated under affidavit number 19,305 before Notary Public Cristina D. Ríos Mena as to the undersigned

and under affidavit number 18,600 before Notary Public Jorge Alexis Meléndez Rivera as to Biomass (the "**Site Lease**", and collectively with the Purchase Agreement, the "**Site Agreements**"). In connection with the grant by Biomass of a security interest on the Site Agreements in favor of the Administrative Agent, for the benefit of the Lenders under a Security Agreement and an Assignment of Leasehold Interest (collectively, the "**Security Documents**") to be executed under the Credit Agreement, Biomass has requested that the undersigned deliver this Estoppel and Consent (this "**Consent**").

For good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby certifies, acknowledges and agrees as follows:

1. The undersigned is the seller under the Purchase Agreement, a true, correct and complete copy of which, is attached hereto as Exhibit A.

2. The undersigned is the lessor under the Site Lease, a true, correct and complete copy of which, is attached hereto as Exhibit B. The Site Lease sets forth the entire agreement under which the undersigned leases the Sites to Biomass.

3. The Site Agreements are in full force and effect and have not been amended, modified, supplemented or superseded, except as set forth in Exhibit A and Exhibit B hereto.

4. The undersigned is the sole owner in *fee simple* of the Landfill. Except as set forth in Exhibit C hereto, the undersigned has not, mortgaged, hypothecated, encumbered or pledged its interest in either of the Site Agreements, the Landfill Gas, or the Landfill.



5. No notice of default under any of the Site Agreements has been given by the undersigned to Biomass. No notice of default has been received by the undersigned from Biomass under any of the Site Agreements. To the undersigned's knowledge (a) there are no defaults by Biomass under any of the Site Agreements, and (b) no event has occurred which, with the giving of notice or the lapse of time, or both, would constitute a default by Biomass under any of the Site Agreements.

6. Notwithstanding any provision of the Site Agreements to the contrary, Biomass shall not be entitled to terminate or modify any of the Site Agreements prior to the expiration of the scheduled term set forth in such Site Agreements, unless Biomass has furnished the undersigned a copy of the written consent of the Administrative Agent to such action, and any such termination or modification obtained without the written consent of the Administrative Agent shall be null and void and, therefore, of no force or effect. If Biomass chooses not to exercise any option to renew the term of any of the Site Agreements, then the Administrative Agent, or its designee, may exercise any such option to renew provided that all conditions precedent and requirements set forth in any such Site Agreements to the exercise of said option have been met.

7. The undersigned hereby acknowledges receipt of the Security Documents and, subject to the terms hereof and the applicable provisions of the Site Agreements, consents to the security and the collateral assignment of the Site Agreements by Biomass in favor of the Administrative Agent and the Lenders, and, in accordance with the terms of each Site Agreement, to the exercise of the rights of the Administrative Agent and the Lenders thereunder. Notwithstanding anything to the contrary contained in the Site Agreements, neither the execution

of the Security Documents nor the exercise of any of the rights and remedies of the Administrative Agent and the Lenders thereunder, to the extent such rights and remedies are exercised in accordance with the Site Agreements, shall constitute a default under any of the Site Agreements.

8. The undersigned hereby acknowledges and agrees that the Administrative Agent and the Lenders shall be deemed Collateral Assignees (as defined in the Site Agreements) and shall benefit from all rights, title and interests granted to a Collateral Assignee as set forth in Section 11.11(b) of the Purchase Agreement and Section 20 of the Site Lease. In the event of a foreclosure of any of the Security Documents, the undersigned will recognize the Administrative Agent (on behalf of the Secured Parties) or any of its designees as the new buyer and/or lessee under the corresponding Site Agreement in accordance with all of the terms, covenants, conditions and agreements thereunder; provided that, in accordance with Section 11.11(b) of the Purchase Agreement and Section 20 of the Site Lease, any subsequent sale, transfer or assignment of either Site Agreement to any third party other than the Administrative Agent shall be subject to the same limitations and restrictions on transfer and assignment as set forth in such Site Agreement, and no such sale, transfer or assignment of either Site Agreement shall be made and valid unless all obligations of the assigning party under such Site Agreement are current or are brought current at the time of such sale, transfer or assignment or the undersigned otherwise consents in writing in advance.



9. If at any time the undersigned intends to terminate any of the Site Agreements as a result of the occurrence of any default under the terms of any of the Site Agreements, the undersigned shall send a copy of the written notice of such default to the Administrative Agent at its address at: Banco Popular de Puerto Rico, 208 Ponce de León Avenue, Popular Center, 6th Floor, San Juan, Puerto Rico 00918, Attention: Corporate Banking Division, and:

(a) if such default results from Biomass' failure to pay any monetary obligations required to be paid by it under the terms of the Site Agreements, the Administrative Agent shall be entitled to cure, or cause to be cured, any such default within thirty (30) days after receipt of such notice from the undersigned; or

(b) as to any default by Biomass other than a monetary default as described in (a) above, the Administrative Agent shall be entitled, but not obligated, to cure, or cause to be cured, any such default (i) so long as the Administrative Agent is using reasonable diligence to cause such cure to be effected or to foreclose the Security Documents, and (ii) all monetary obligations required to be paid by Biomass under the terms of the Site Agreements are being timely paid,

then, in the event the Administrative Agent is exercising its rights under sub-clause (a) or (b) above and has provided written notice to the undersigned of such exercise, the undersigned shall not terminate the Site Agreements so long as the Administrative Agent is diligently and continuously pursuing such exercise; provided, however, that the exercise, at any time and from time to time, by the Administrative Agent of any of its rights under this Paragraph 9 shall not be construed as an assumption of any of Biomass' obligations and/or liabilities under any of the Site Agreements. Subject to the foregoing and except to the extent of Administrative Agent's right to cure, as provided in this Paragraph 9, nothing in this Consent shall limit Biomass' obligations to the undersigned under the Site Agreements or the undersigned's right to exercise its rights and

remedies under either Site Agreement upon default thereunder (beyond applicable notice and/or cure period) by Biomass .

      10.     The undersigned agrees that in the event of a termination, disaffirmance or rejection of any of the Site Agreements by Biomass or any person or entity acting on behalf of Biomass (including a trustee in bankruptcy) pursuant to any applicable laws (including any bankruptcy laws) or the termination of any of the Site Agreements for any other reason, except the expiration pursuant to its terms, and provided the undersigned has received actual notice of such event, the undersigned will give the Administrative Agent (on behalf of the Lenders) or its designee the right, within sixty (60) days of such event and provided all curable defaults under the corresponding Site Agreements have been cured, to enter into a new landfill gas purchase and sale agreement and/or new site access agreement to the Site in its own name or through its designees with the undersigned so long each such agreement contains rights, duties and obligations of such counterparty similar to those rights, duties and obligations of Biomass set forth in each Site Agreement (collectively, the "**New Agreements**"). Upon written request from the Administrative Agent, the specified date for the termination of the corresponding Site Agreement will be extended for a period of sixty (60) days, provided that the Administrative Agent or its designee shall continue to pay all amounts due under the Site Agreements and comply with all other terms, covenants, conditions and agreements of Biomass thereunder. Such 60-day period shall be extended for such additional period as shall be reasonably necessary, but in no event longer than one hundred twenty (120) additional days (for a cumulative total not to exceed one hundred eighty (180) days from the date of the event giving rise to the Administrative Agent's request for a New Agreement), for the Administrative Agent or any of its designees, exercising reasonable diligence, to acquire or sell Biomass' interest in the Sites and the Landfill Gas. The New Agreements shall be for the remainder of the term of the Site Agreements and upon all of the terms and conditions, and subject to all of the restrictions, of the Site Agreements, or, if the Administrative Agent shall elect not to exercise such right, the undersigned will give the Administrative Agent the right to enter upon the Sites during a sixty (60) day period from the date Administrative Agent provides notice of its election, for the purpose of removing Biomass' personal property therefrom, provided the Administrative Agent shall repair all damage caused from such removal and such removal shall be subject to the applicable restrictions set forth in the Site Agreements.



      11.     Neither the Administrative Agent nor any Lender shall be personally liable for any defaults or breach of Biomass under any of the Site Agreements which occur prior to the date on which the Administrative Agent (on behalf of the Lenders), or its designee becomes the owner of, or assumes, Biomass' rights, title and interests under the Site Agreements, nor shall the Administrative Agent nor any Lender nor any designee of any of them incur any liability for any default or breach under any of the Site Agreement occurring after the date on which it assigns or transfers its respective interest in the Site Agreements to a third party.

      12.     The assignment, lien and security interest granted by Biomass to the Administrative Agent and the Lenders in and to the Site Agreements (including the leasehold estate to the Sites) and personal property and trade fixtures and fixtures of Biomass, whether now or hereafter existing or now owned or hereafter acquired and located on or about the Landfill or the Sites, of every kind and description, tangible or intangible (the "**Collateral**") shall have priority to the extent of all obligations of Biomass to the Administrative Agent and the Lenders secured thereby over any security interest or lien or any other rights (statutory or otherwise), however acquired, of the

undersigned in or affecting the same Collateral To the extent such consent is required, the undersigned hereby consents to Biomass' granting of a first priority security interest in the Collateral to the Administrative Agent and the Lenders, and further consents to the filing and recording of any documents reasonably required by the Administrative Agent and the Lenders to perfect their interests in the Site Agreements and the Collateral, including, without limitation, the filing of UCC-1 fixture financing statements.

13. The undersigned agrees to send to the Administrative Agent, at its address set forth in paragraph 9 above, a copy of any notice received by the undersigned of a breach or default under either Site Agreement. All notices to be given to the Administrative Agent shall be sent to the address specified in paragraph 9 hereof.

The above representations, covenants, warranties and agreements are made to Banco Popular de Puerto Rico, as Administrative Agent for the Lenders, and PCC Sub-CDE 13, LLC (collectively, the "Addresssees"), with knowledge that the Lenders will rely thereon in making Advances (as such term is defined in the Credit Agreement) to Biomass, and shall inure to the benefit of the Addressees, the Lenders and respective successors, administrators and assigns and shall be binding upon the successors, administrators and assigns of the undersigned. The undersigned, prior to transferring any interest in any of the Site Agreements, the Landfill or the Sites shall provide notice to the Administrative Agent of such transfer and transferee, and Biomass shall coordinate with the transferee to execute in favor of the Administrative Agent, for its benefit and the benefit of the Lenders, an instrument in form and substance substantially similar to this Consent.

Very truly yours,

EL COQUI LANDFILL COMPANY, LLC

By: _____
Name: Randy Jensen

**ACKNOWLEDGED AND AGREED**
as of the date first written above:

**BIOMASS GREEN FUELS LLC**

By: _____
Name: Orma-Lopez Vidal
Title: Authorized Representative

**BANCO POPULAR DE PUERTO RICO,**
as Administrative Agent

By: _____
Name: Jovalb F. Rodriguez
Title: Commercial Relationship Officer