**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Gregory Boyd, et al., | |
| Plaintiffs, | **Civil No. 22-1190 (GMM)** |
| v. | |
| Olmar López-Vidal, et al., | |
| Defendants. | |

## OPINION AND ORDER

This case arises from a dispute over the alleged misconduct of officers to GFC Holdings, LLC ("GFC") and Biomass Green Fuels, LLC ("BGF"). The issue to be resolved is a request to hold defendants Olmar López-Vidal and Olmar López-Gómez in contempt for violation of Magistrate Judge Marcos E. López's ("Magistrate Judge") orders during mediation. *See* (Docket No. 295).

Before the Court is the November 18, 2024, Report and Recommendation ("R&R") issued by the Magistrate Judge. (Docket No. 526). In his report, the Magistrate Judge addressed the *Urgent Petition for Entry of Contempt Order* and related filings. (Docket Nos. 295; 300; 326; 368). For the following reasons, the Court **ADOPTS the R&R IN PART and REJECTS the R&R IN PART,** as discussed herein.

Civil No. 22—1190 (GMM)
Page -2-


# I. <u>BACKGROUND</u>

A.    <u>The Lawsuit in Federal Court</u>

On January 31, 2023, plaintiffs Gregory Boyd and Jonathan Lassers, individually and on behalf of BGF and GFC for their derivative claims (collectively, "Plaintiffs") filed a *Second Amended Complaint*. (Docket No. 147). Plaintiffs alleged multiple causes of action against Olmar López-Gómez, Vivian Vidal de López, the Conjugal Partnership López-Vidal, Olmar López-Vidal, Cristina Ríos Mena, the Conjugal Partnership López-Mena, Green CO2 Dominica S.R.L., Carlos López-Vidal, Claudia Ferrer Tañón, the Conjugal Partnership López-Ferrer, World Spirits, LLC, Alexander Borschow, Mariella Danspeckgruber, the Conjugal Partnership Borschow Danspeckgruber, George Economou, Lidiana Rodríguez, the Conjugal Partnership Economou-Rodríguez, Joval Rodríguez Barnes, Stephanie Cummings, the Conjugal Partnership Rodríguez-Cummings, International Technical Services, Inc., Accurate Solutions, Corp., Distributed Power Innovators JV, Banco Popular, Semillero Partners, and The Puerto Rico Fund for Growth and Community Development Venture Capital Alliance (collectively, "Defendants"). (Docket No. 147).

The complaint seeks: (1) a declaratory judgment that Gregory Boyd has not misappropriated BGF's trade secrets by negotiating discounts with suppliers for a biorefinery; (2) a declaratory

judgment that Gregory Boyd has not violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq.; (3) a declaratory judgment that Gregory Boyd's personal guaranties are unenforceable; (4) a declaratory judgment that Banco Popular's "Bank Credit Agreement 7.1(e) " be deemed null and void; (5) damages for breach of contract; (6) damages for fraudulent inducement and concealment ("dolo"); (7) damages for violations to the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(a); (8) damages for violations to Rule 10b-5 issued by the Securities and Exchange Commission; (9) compensation for breach of fiduciary duty; (10) damages for defamation; and (11) to present derivative claims on behalf of BGF and GFC for "misconduct" of the defendants. *See* (id.).

B.    The Mediation

On March 27, 2023, the following persons or entities, some of which are parties identified in the complaint while others are not, executed a "Mediation Agreement": VRM Penzini Capital, LLC and VRM Penzini Fund I, LLC Renewable Series II. ("VRM Penzini"); BGF; GFC; Gregory Boyd; Jonathan Lassers; Olmar López-Gómez, Vivian Vidal de López, the Conjugal Partnership López-Vidal; Olmar López-Vidal, Cristina Ríos Mena, the Conjugal Partnership López-Ríos; George Economou, Lidiana Rodríguez, the Conjugal Partnership Economou-Rodríguez; Carlos López-Vidal, Claudia Ferrer Tañón, the

Civil No. 22—1190 (GMM)
Page -4-

Conjugal Partnership López-Ferrer; Distributed Power Innovators JV; International Technical Services, Inc.; International Technical Services Corp. I.T.S. Corporation; World Spirits, LLC; Green CO2 Dominica S.R.L.; Green Co2 Dominicana LLC of Puerto Rico; Green Co2, LLC; Green Hydrogen, LLC; Semillero Partners, LLC ("Semillero Partners"); Alexander Borschow, Mariella Danspeckgruber, the Conjugal Partnership Borschow-Danspeckgruber; Community Development Venture Capital Alliance ("CDVCA"); the Puerto Rico Fund for Growth ("PRFG"); CB Solutions Corp.; Accurate Solutions, Corp.; Roberto D. Acosta Marín; Banco Popular de Puerto Rico ("BPPR"); and Joval Rodríguez Barnes, Stephanie Cummings, and the Conjugal Partnership Rodríguez-Cummings. (Docket No. 295-1). On that same date, *Joint Motion Requesting Mediation and a Stay of Proceedings Pending Mediation* was filed, and the referral order was issued accordingly the following day. (Docket Nos. 159; 160). The Mediation Agreement labels VRM Penzini, its members, and respective agents, successors, executors, administrators, personal representatives, and assigns as "the VRM Parties." As to all the remaining parties and their respective agents, successors, executors, administrators, personal representatives, and assigns, the Mediation Agreement refers to them as "the Litigation Parties."

The following provisions are included in the second section of the Mediation Agreement, among others:

3.   Both the Litigation Parties and the VRM Parties
     agree to maintain as confidential between the
     Parties and the Court the progress of such
     mediation, and any communications or negotiations
     in furtherance thereof. The Parties further agree
     that any documents and/or information disclosed
     during the mediation, to the extent not already
     public and disclosed on a confidential basis during
     the mediation, shall be treated as confidential for
     purposes of the mediation. Notwithstanding the
     foregoing, no provision herein shall be deemed as
     a limitation on any of the Litigation Parties to
     engage in discovery pursuant to the Rules of Civil
     Procedure if the Litigation is reactivated.

4.   None of the VRM Parties or the Litigation Parties
     shall make a claim against the other based on the
     participation by any of the VRM Parties or the
     Litigation Parties in the court supervised
     mediation of the Litigation, or in connection with
     the negotiations and communications made during or
     in furtherance of such mediation. Without limiting
     the foregoing, each of the VRM Parties and the
     Litigation Parties agree that they may not use any
     of the following as evidence to prove or disprove
     the validity or amount of a disputed claim or to
     impeach any of the Parties by a prior inconsistent
     statement:

          (a)  Furnishing, promising or offering –
               or accepting, promising to accept or
               offering to accept—a valuable
               consideration in compromising or
               attempting to compromise any of the
               claims as part of the court-
               supervised mediation of the
               Litigation; and/or

          (b)  Conduct or a statement made during
               negotiations as part of the court-
               supervised mediation of the
               Litigation.

(Docket No. 295-1, at 2-3).

Civil No. 22—1190 (GMM)
Page -6-

Five mediation sessions were held between May 17, 2023, and August 16, 2023. (Docket Nos. 188; 195; 234; 235; 248). Not all the signatories of the Mediation Agreement were invited to attend all the mediation sessions. Instead, as the mediation process progressed and depending on their willingness to consider various settlement scenarios, different groups were summoned to participate in the mediation sessions that were held. The Magistrate Judge issued an order of confidentiality among the directives given to *all* the participants in the mediation process. *See* (Docket No. 188 at 4)[1].

C.  <u>The Settlement Agreement and the Settlement Agreement and Release</u>

An oral settlement agreement ("Settlement Agreement") was reached in the Second Mediation Session held May 19, 2023, only between the following parties (collectively "Settling Parties"): nonparty VRM Penzini Capital, LLC; Gregory Boyd; Jonathan Lassers; CDVCA; PRFG; Alexander Borschow; Mariella Danspeckgruber; the Conjugal Partnership Borschow-Danspeckgruber; Joval Rodríguez; Stephanie Cummings; the Conjugal Partnership Rodríguez-Cummings; Semillero Partners; BPPR; BGF; and GFC. (Docket No. 195). Said persons or entities agreed to execute a written settlement

---

[1] Minutes of First Mediation Session: "All matters discussed at all mediations sessions must be maintained strictly confidential unless explicitly ordered or allowed otherwise by the court. Failure to maintain the confidentiality of the matters addressed or discussed during the mediation process may result in the imposition of sanctions."

Civil No. 22—1190 (GMM)
Page -7-

agreement not later than May 26, 2023, the terms of which were to include a release of all claims without further litigation and incorporate a Letter of Intent dated May 16, 2023, and a document titled "Key Heads of Terms GFC Transaction." (Docket No. 195 at 3-14). As part of the Settlement Agreement, by May 30, 2023, Gregory Boyd and Jonathan Lassers would move to dismiss with prejudice all claims against those co-defendants mentioned and to dismiss with prejudice their derivative claims on behalf of BGF and GFC.

After granting several extensions of time, the Settling Parties failed to execute their agreement in writing. After which the Court set a final deadline, and the Settling Parties were put on notice that failure to carry though the representations and promises made during the Second Mediation Session could result in the imposition of sanctions. *See* (Docket No. 206). On June 22, 2023, the Settling Parties requested an additional mediation session, which was held on July 20, 2023, and during which the Settling Parties finally executed the *Settlement Agreement and Release* ("SAR"). (Docket Nos. 223; 235). As part of the SAR, Gregory Boyd, Jonathan Lassers, Semillero Partners, CDVCA, PRFG, as members of GFC, agreed to sell their respective ownership interest in GFC under the parameters set forth in a non-binding Letter of Intent dated May 16, 2023, issued by VRM Penzini, subject

Civil No. 22—1190 (GMM)
Page -8-

to the negotiation and signing of the certain closing documents.
(Docket No. 235 at 6).

D.    The Commonwealth Action

On September 20, 2023, Olmar López-Vidal and Olmar López-
Gómez (jointly referred to as the "López Group") filed a lawsuit
in the Court of First Instance, San Juan Part, of the Commonwealth
of Puerto Rico, Olmar López-Vidal et al. v. VRM Penzini Capital,
LLC et al., SJ2023CV8898 (the "Commonwealth Action") against VRM
Penzini; Rafael E. Rojo-Montilla as Managing Partner of VRM
Penzini; Carlos Penzini-Granier as Managing Partner of VRM
Penzini; and Rodrigo Zavala as Chief Operating Officer of BGF.
(Docket No. 305-1). The complaint presents: (1) a petition for
injunctive relief under the Corporations Act of Puerto Rico, 14
LPRA § 3655; (2) a request for the issuance of a temporary
restraining order, a preliminary injunction and a permanent
injunction "to stay any stratagem of the defendants to take control
of GFC and. . .[BGF] and influence decision-making at those
companies"; (3) a demand to declare that the López Group has the
right to continue to hold two seats on the GFC Board of Managers;
(4) a request for a declaratory judgment that the position of
Independent Administrator be restored to its original state; (5)
a petition for declaratory judgment that the option exercised by
VRM Penzini on August 19, 2023 "has no legal effect whatsoever";

Civil No. 22—1190 (GMM)
Page -9-

(6) claims for violations of fiduciary duties and the doctrine of good faith; (7) a cause of action of nullity because Carlos Penzini-Garnier and Rafael E. Rojo-Montilla are not registered as Investment Advisor Representatives under the Securities Act; (8) a request for damages for misrepresentations making the López Group believe that they would continue to be part of the GFC and BGF senior management and for breach of duty of care.[2] (Id.).

E.    The Contempt Motion

Pending before the Court is the *Urgent Petition for Entry of Contempt Order* ("Petition for Contempt Order") requested by Gregory Boyd, Jonathan Lassers, BGF, FGC, Alexander Borschow, Mariella Danspeckgruber, the Conjugal Partnership Borschow-Danspeckgruber, Semillero Partners, PRFG, CDVCA, and nonparties VRM Penzini Capital, LLC and VRM Penzini Fund I, LLC Renewable Series II (all movants collectively referred to as the "Movant Settling Parties"). (Docket No. 295). The López Group filed *Response to "Urgent" Motion for Contempt* at Docket No. 300. The Movant Settling Parties filed *Reply to Response to Urgent Motion for Contempt and Supplement to Motion for Contempt*, and the López Group in turn filed *Sur-Reply in Further Support of Opposition to*

---

[2] Since the conclusion of the mediation, two additional cases have been filed at the Commonwealth Court of First Instance, San Juan Part: (1) Banco Popular de Puerto Rico v. Biomass Green Fuels LLC, et al., SJ2024CV04616; and (2) VRM Penzini Fund I, LLC - Renewable Series II, et al. v. Olmar López Vidal, et al., SJ2023CV08898. (Docket No. 523 at 2).

Civil No. 22—1190 (GMM)
Page -10-

*Motion for Contempt*. (Docket Nos. 326; 368). The Petition for Contempt Order was referred to the Magistrate Judge for report and recommendation at Docket No. 304.

The Petition for Contempt Order requests two separate interventions by the Court. First, the Movant Settling Parties argue that "because of [the López Group's] conduct directed at preventing the consummation of the closing required under the Settlement Agreement[,]" the Court should issue an injunction to prevent the López Group from moving forward with their collateral attack to the proceedings in the instant case and the Settlement Agreement. *See* (Docket No. 295 at 8, 11).

According to the Movant Settling Parties, the SAR was conditioned on the VRM Parties acquiring 100% of the existing GFC preferred and common membership units plus certain outstanding GFC convertible notes for a total valuation of $20,907,843 ("Purchase Price") and includes the consideration to be paid plus the assumption of up to $1,200,000.00 in GFC's account payables, in accordance with a Letter of Intent dated May 16, 2023 ("LOI"). *See* (Docket No. 195 at 3-4 (Paragraph 1.1 of LOI); 235 at 9 (Paragraph 9(A) of the SAR, incorporating the LOI)). Settling Parties posit that the "closing documents" contemplated by the SAR referred to Membership Interest Purchase Agreements (MIPA's) through which VRM

Civil No. 22—1190 (GMM)
Page -11-

Penzini would acquire 100% of the GFC membership interests. *See* (Docket No. 237 at 7).

The GFC members who decided not to enter into the Settlement Agreement (i.e., the López Group), as well as non-party preferred members Parliament Capital Series II, LLC and Flexitank, Inc., were provided "drag along" notices under GFC's Operating Agreement, which require all of them to sell their GFC membership units to VRM Penzini under the same terms and conditions of the MIPA's. Upon consummation of the "drag along" rights, VRM Penzini would become 100% owner of the membership interests of GFC as required under the Settlement Agreement. The Movant Settling Parties argue that the "drag along" rights are legally enforceable by the majority interest holders pursuant to GFC's Operating Agreement and that all GFC members had knowledge and notice of this requisite step in the transaction. *See* (Docket No, 235 at 1-2 (referencing Group B's participation in the SAR), at 25-26 (signature pages for BGF and GFC, as authorized by the Board of Directors)).

The Movant Settling Parties argue that the López Group is trying to prevent the closing of the SAR, by filing the Commonwealth Action, in which the López Group alleges, among other things, that the decisions taken by the required majorities of the members of GFC to allow VRM Penzini Fund I, LLC Renewable Series

Civil No. 22—1190 (GMM)
Page -12-

II to acquire a 100% membership interest in GFC are acts in violation of Puerto Rico General Corporations Law. The López Group argues the agreement, which was made by the written consent of the majority of the GFC members should have been conducted in a convened meeting of GFC members where a vote of the members was taken, as they allege is required by the Operating Agreement. This latter contention is disputed, as according to the Settling Parties, the General Corporations Law of Puerto Rico provides that such action can be taken by written consent of the majorities required pursuant to the GFC Operating Agreement, as it was taken. (Docket No. 295 at 5). The Movant Settling Parties contend that the López Group's actions have the objective to "hijack" the SAR and "obstruct the proceedings before this Court collaterally by requesting a preliminary injunction from the Commonwealth Court." (Docket No. 295 at 6).

In their defense, the López Group states that filing the Commonwealth Action was not a tactic to disrupt the execution of the SAR, but a legitimate effort to address "serious allegations against [VRM Penzini, related to their hostile takeover of [GFC] *effectuated, inter alia, by way of engaging in illegal conduct to preclude the López Group from meeting a $4.3 million capital call and retaining control of GFC.*" (Docket No. 300 at 2) (emphasis in original). The López Group urges the Court to deny the Petition

for Contempt Order because the Letters of Intent provide that the courts of Puerto Rico shall have the exclusive jurisdiction to resolve all dealings with the López Group, and the Mediation Agreement specifically states that it does not affect other agreements between the parties. *See* (id. at 2-3; 6-10). The López Group further argues that the Settling Parties did not request this Court to retain jurisdiction to address controversies under the voluntary mediation process. (Id. at 3).

Second, the Movant Settling Parties allege that the López Group, by filing the Commonwealth Action with its attached documents, violated the direct order of the Magistrate Judge to maintain in strict confidentiality the matters discussed, and the documents exchanged through the mediation process. *See* (Docket No. 326 at ¶¶ 20, 34). Specifically, the Movant Settling Parties argue the Complaint filed by the López Group in the Commonwealth Action disclosed the existence of a mediated settlement agreement and attached as an exhibit the May 16 Letter of Intent provided by VRM Penzini during the mediation process which outlined the contemporaneous transaction contemplated in the SAR. *See* (Docket No. 295). For this violation, the Movant Settling Parties request the Court issue monetary contempt sanctions against the López Group in an amount rivaling the financial benefits of the transaction that would allegedly have taken place, but for the López Group's

actions. *See* (Docket Nos. 335 at 3; 457 at 17, lines 5-16; 496 at 3, 10-11).

F.    Motion to Enforce Settlement

Joval Rodríguez, Stephanie Cummings, and the Conjugal Partnership Rodríguez-Cummings ("Rodríguez Parties") filed a *Motion to Enforce Mediated Settlement Agreement.* They allege that the Plaintiffs, by refusing to request dismissal with prejudice of all claims against them, have breached the second paragraph of the Terms and Conditions section of the SAR. *See* (Docket No. 427). Although the "Closing Documents," which the SAR defines as "the definitive written agreements with all terms and conditions acceptable to the relevant parties to finalize the purchase by VRM Penzini of the membership interests of Plaintiffs, [Semillero Partners, LLC, also termed Semillero Ventures, LLC in the litigation in this case], [Community Development Venture Capital Alliance] CDVCA, and [Puerto Rico Fund for Growth]", have not been executed yet, the Rodríguez Parties assert that they are not relevant parties to the execution of said documents and should be released from the litigation under the SAR. (Docket Nos. 235 at 6; 427 at 4).

After reviewing the motion at Docket No. 427 and Plaintiffs' *Corrected Opposition to Motion to Compel Under* Seal at Docket No. 439, the Court denied the Rodríguez Parties' motion without

Civil No. 22—1190 (GMM)
Page -15-

prejudice pending the resolution of the Petition for Contempt Order. *See* (Docket No. 517). The Rodríguez Parties requested leave to file a renewed motion to enforce the SAR at Docket No. 543, as part of its *Limited Objection to Report and Recommendation*. The Court granted the request, and the Rodríguez Parties filed their *Motion to Enforce Mediated Settlement Agreement* at Docket No. 553. Plaintiffs filed their *Opposition to Motion to Compel* at Docket No. 562 and the Rodríguez Parties filed a *Reply to Plaintiff's Opposition to Motion to Enforce Mediated Settlement Agreement* at Docket No. 576.

After undertaking a careful review of the record before him, the Magistrate Judge issued a Report and Recommendation ("R&R"). He recommended that the *Urgent Petition for Entry of Contempt Order* be granted in part and sanctions be ordered against Olmar López-Vidal.

The following parties timely filed separate objections to Magistrate Judge's R&R: plaintiffs Gregory Boyd and Jonathan Lassers (Docket No. 545) and Olmar López-Vidal (Docket No. 559). VRM Penzini and Semillero Partners jointly filed a timely response to those objections at Docket No. 560.

## II.  **LEGAL STANDARD**

A.  Report & Recommendation

A district court may refer a pending motion to a magistrate judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Loc. Civ. R. 72(b). The court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Diaz-Alarcon v. Flandez-Marcel, 944 F.3d 303, 312 (1st Cir. 2019); Alamo Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F.Supp.2d 144, 146 (D.P.R. 2003). Any party adversely affected by the R&R may file written objections within fourteen days of being served with the magistrate judge's report. Loc. Civ. R. 72(d). *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." Ramos-Echevarría v. Pichis, Inc., 698 F.Supp.2d 262, 264 (D.P.R. 2010); Sylva v. Culebra Dive Shop, 389 F.Supp.2d 189, 191-92 (D.P.R. 2005) (*citing* United States v. Raddatz, 447 U.S. 667, 673 (1980)). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. *See* Hernandez-Mejias v. General Elec., 428 F.Supp.2d 4, 6 (D.P.R.2005) (*citing* Lacedra v. Donald W. Wyatt Detention Facility, 334 F.Supp.2d 114, 125-126 (D.R.I.2004)).

Civil No. 22—1190 (GMM)
Page -17-

B.  Contempt

"[C]ourts have inherent power to enforce compliance with
their lawful orders through civil contempt." Shillitani v. United
States, 384 U.S. 364, 370 (1966).

> To prove civil contempt, a moving party. . .must show by
> clear and convincing evidence that: "(1) the alleged
> contemnor had notice of the order, (2) 'the order was
> clear and unambiguous,' (3) the alleged contemnor 'had
> the ability to comply with the order,' and (4) the
> alleged contemnor violated that order."

Rodríguez-Miranda v. Benin, 829 F.3d 29 (1st Cir. 2016) (citing
Hawkins v. Dep't of Health & Human Servs. For N.H., Comm'r, 665
F.3d 25, 31 (1st Cir. 2012); see also United States v. Saccoccia,
433 F.3d 19, 27 (1st Cir. 2005)); Martin v. Trinity Indus., Inc.,
959 F. 2d 45, 47 (5th Cir. 1992). The movant must establish these
requirements by clear and convincing evidence that the contemnor
violated a court order. See Project B.A.S.I.C. v. Kemp, 947 F.2d
11, 17 (1st Cir. 1991).

A court order is "clear and unambiguous" when "the words of
the court's order have clearly and unambiguously forbidden the
precise conduct on which the contempt allegation is based." U.S v.
Saccoccia, 433 F.3d 19, 28 (1st Cir. 2005) (citing Perez v. Danbury
Hosp., 347 F.3d 419, 424 (2d Cir.2003)) (emphasis in original).
According to the Supreme Court, "an alleged contemnor has the
burden of showing a current inability to comply with a court
order," and "must overcome a presumption of ability to comply with

Civil No. 22—1190 (GMM)
Page -18-

a court order." Hicks v. Feiock, 479 U.S. 1305, 1306 (1986) (*citing*

United States v. Rylander, 460 U.S. 752, 757, 103 S.Ct. 1548, 75

L.Ed.2d 521 (1983)).

If the court finds a party to be in contempt for failure to

comply with a court order, it has broad discretion in determining

the appropriate coercive remedy. *See* Brown v. Colegio, 765

F.Supp.2d 133, 138 (D.P.R. 2011) (*citing* Goya Foods, Inc. v.

Wallack Mgmt. Co.*,* 344 F.3d 16, 21 (1st Cir. 2003)). In exercising

its discretion, the Court "must fashion sanctions that will ensure

compliance with the Court's orders and at the same time correct

some of the damage done by their violations." Id. at 140.

C.    All Writs Act

A District Court has the authority to protect its jurisdiction

from collateral attacks to a settlement agreement reached within

its purview. The All Writs Act, 28 U.S.C. §1651(a) provides that

"[t]he Supreme Court and all courts established by Act of Congress

may issue all writs necessary or appropriate in aid of their

respective jurisdiction and agreeable to the usages and principles

of law." *See also* Harris v. Nelson, 394 U.S. 286, 299-300 (1969)

("[T]he Courts may fashion appropriate modes of procedure, by

analogy to existing rules otherwise in conformity with judicial

usage. Where their duties require it, this is the inescapable

obligation of the courts. Their authority is expressly confirmed

Civil No. 22—1190 (GMM)
Page -19-

in the All Writs Act, 28 U.S.C. § 1651. This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve the rational ends of law.").

The All Writs Act authorizes a court to issue writs any time "the use of such historic aids is calculated in its sound judgment to achieve the ends of justice and entrusted to it." Adams v. U.S. ex rel. McCann, 317 U.S. 269, 273 (1942). The All Writs Act invests federal courts with the authority to prevent parties and nonparties from frustrating a Court's exercise of its jurisdiction. See U.S. v. New York Tel. Co., 434 U.S. 159, 174 (1977) ("[T]he power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice and encompasses those who have not taken any affirmative action to hinder justice.").

D.    Anti-Injunction Act

The authority granted to federal courts by the All Writs Act may in some circumstances be curbed by the Anti-Injunction Act, 28 U.S.C. § 2283, which is "an absolute prohibition" against enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions. See Atlantic Coast Line

R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286 (1970); Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo, 988 F.2d 252, 261 (1st Cir. 1993); García v. Bauzá-Salas, 862 F.2d 905, 907 (1st Cir. 1988).

The three exceptions to the Anti-Injunction Act's prohibition are that: (1) it be expressly authorized by an Act of Congress; (2) *it be necessary in aid of the federal court's jurisdiction*; or (3) to protect or effectuate the federal court's judgments. 28 U.S.C. § 2283 (emphasis added). Although these exceptions are to be narrowly construed, the exceptions allow for injunctive interference with state court actions when they directly threaten the jurisdiction of the federal court. *See* Casa Marie, 988 F.2d at 261 (1st Cir. 1993) (*citing* Mitchum v. Foster, 407 U.S. 225, 228-29 (1972); Atlantic Coast Line, 398 U.S. at 298); *see also* Garcia v. Bauza-Salas, 862 F.2d 905 (1st Cir. 1988) ("Typically, this exception has been applied in either in rem proceedings[], or in cases where a state-court proceeding would interfere with ongoing federal oversight of a case.") (citations omitted).

### III. <u>ANALYSIS</u>

A.  <u>Motion for Contempt</u>

The Petition for Contempt Order challenges the López Group's actions for multiple reasons. First, the Movant Settling Parties argue that the López Group should be held in contempt for violating

Civil No. 22—1190 (GMM)
Page -21-

the Magistrate Judge's orders for strict confidentiality in the
mediation process. And second, the Movant Settling Parties request
an entry of contempt against the López Group for their actions to
frustrate the aims of the SAR by refusing to comply with the drag-
along provisions as required by GFC's Operating Agreement, and by
filing the Commonwealth Action which implicitly challenges the
validity of the mediated agreement. *See* (Docket No. 295). The
Movant Settling Parties further request contempt sanctions against
the López Group and injunctive relief to prevent them moving
forward with their collateral attack. (Id.).

    1.   The Motion for Contempt Order is Not Moot as to
           Olmar López-Gómez.

On October 7, 2024, non-parties VRM Penzini Capital, LLC and
VRM Penzini Fund I, LLC Renewable Series II (the "VRM Parties")
filed an *Informative Motion and Request to Voluntarily Terminate
Motion for Contempt as to Olmar López-Gómez.* (Docket No. 518).
Among other things, the motion explains that Waleska Rivera,
Parliament Capital Series II, LLC, Johnny Fernández (Flexitank,
Inc.), Olmar López-Gómez and Olmar López-Vidal refused to execute
MIPAs, as required under the drag-along notices and sell their
membership interests to the VRM Parties. For this reason, the
closing of the transactions contemplated in the Settlement
Agreement never occurred and the Settlement Agreement was
terminated. In the meantime, the motion explains, BPPR filed a

Civil No. 22—1190 (GMM)
Page -22-

complaint for collection of monies and foreclosure of collateral against GFC, BGF and certain guarantors in the Court of First Instance of the Commonwealth of Puerto Rico, San Juan Part. (Id. at 2).

VRM Penzini informed the Court that on September 20, 2024, the majority of the members of GFC (including Olmar López-Gómez but excluding Olmar López-Vidal) approved an asset purchase proposal presented by VRM Penzini Fund I, LLC Renewable Series II and a Letter of Intent was agreed to, accepted and executed by GFC. (Id. at 3). Due diligence continues and the closing of the transaction contemplated in the Letter of Intent was scheduled to occur on or before December 31, 2024. (Id.). Furthermore, after the execution of the Letter of Intent, the VRM Parties and Semillero Partners entered into a settlement agreement with Olmar López-Gómez, resulting in the dismissal with prejudice of all claims filed by Olmar López-Gómez in the Commonwealth Action. For this reason, VRM Penzini informed the Court of their decision to withdraw its Petition for Contempt Order, but only as to Olmar López-Gómez. (Id.).

In his R&R, the Magistrate Judge reasoned that the motion by the VRM Parties and Semillero Partners to withdraw their motion for contempt against Olmar López-Gómez rendered the issue of contempt as to him moot. In an objection to the R&R, Plaintiffs

Civil No. 22—1190 (GMM)
Page -23-

Gregory Boyd and Jonathan Lassers argue that because they did not
join in the request to withdraw the Petition for Contempt Order as
to Olmar López-Gómez, the matter is not moot as to him. *See* (Docket
No. 545). Plaintiffs assert that whatever agreement Olmar López-
Gómez reached with the VRM Parties and Semillero Partners did not
erase the impact that his actions had on plaintiffs and all
Settling Parties to be able to execute the SAR. *See* (id.).

The Court agrees with Plaintiffs and **REJECTS** the Magistrate
Judge's recommendation that the Petition for Contempt Order as to
Olmar López-Gómez be deemed moot. *See* (Docket No. 526 at 18).
Although the Court commends that Olmar López-Gómez has apparently
taken steps to resolve some tensions between him and a portion of
the Settling Parties, his actions in disregard of the Court's order
during the mediation remain the same. As such, any finding of
contempt and resulting monetary sanctions shall apply both to Olmar
López-Gómez and Olmar López-Vidal.

2.    The López Group was in Contempt of the Magistrate's
      Confidentiality Order.

The Movant Settling Parties identified a clear and ambiguous
Court order, a violation of which could result in a finding of
contempt. Specifically, the Magistrate Judge, at the outset of
mediation, issued a verbal order to maintain strict
confidentiality of the mediation process:

Civil No. 22—1190 (GMM)
Page -24-

> All matters discussed at all mediation sessions must be
> maintained strictly confidential unless explicitly
> ordered or allowed otherwise by the Court. Failure to
> maintain the confidentiality of the matters addressed or
> discussed during the mediation process may result in the
> imposition of sanctions.

(Docket No. 188 at 4). Hence, the filings pertaining to the
mediation have been filed under restricted access. There is also
evidence of communications outside of the mediation sessions
themselves corroborating that the participants were well aware of
the importance of maintaining the information, conversations, and
documents of the mediation under strict confidentiality. *See,
e.g.*, (Docket No. 362-2).

The López Group was on notice of the Court's confidentiality
order because their counsel, Rafael M. Santiago-Rosa, attended the
first mediation session, at which the order was given. *See* (Docket
No. 188). Yet, The López Group violated said confidentiality order
when they publicly filed in the Commonwealth Action the Letter of
Intent dated May 16, 2023, which was part of the sealed minutes of
the Second Mediation Session. *See* (Docket Nos. 195 (minutes of
Second Mediation Session); 457 (transcript of hearing on December
1, 2023) at 15-19 (mistakenly referring to an exhibit of the first
mediation session rather than the second one); and 106-110).
Furthermore, the complaint in the Commonwealth Action publicly
discusses confidential communications that occurred between
mediation sessions (as opposed to during mediation sessions) as

Civil No. 22—1190 (GMM)
Page -25-

part of the efforts of the participants to reach a meeting of the minds. *See* (Docket No. 305-1 at 9-11).

As the Magistrate Judge correctly concludes, the López Group and their legal representation had the ability to comply with the Court's order requiring confidentiality of the matters exchanged during the mediation process. First, they could have asked for leave from this Court to file the May 16, 2023, Letter of Intent publicly explaining the reasons as to why it had to be filed publicly, but they did not. Second, instead of filing said Letter of Intent publicly in state court, the López Group could have filed it in a restricted and confidential manner without access to the general public. Nevertheless, no evidence has been brought to the Court's attention that they ever did so prior to the filing of the Motion for Contempt Order. Thus, even assuming *arguendo* that the filing of the Letter of Intent in the Commonwealth Action was critical to support their complaint, the López Group had alternatives to comply with this Court's confidentiality order which they chose not to pursue. Third, although the López Group has been steadfast in its contention that the Commonwealth Action is not challenging the validity of the SAR, it is quite evident that it is impossible for said action's prayer for relief to be granted in full if the SAR is valid and enforceable. Between July 20, 2023, when the SAR came into being and September 20, 2023,

Civil No. 22—1190 (GMM)
Page -26-

when the Commonwealth Action was filed, the López Group could have opted to raise any objections to the validity of the SAR before this Court in the case at bar but chose not to do so. Instead, they publicly disclosed a confidential Letter of Intent, among other confidential communications that were part of the ongoing efforts of the participants during the various stages of the mediation process.

Therefore, the Court **ADOPTS** the Magistrate Judge's determination that all elements for a finding of contempt have been met and finds Olmar López-Vidal in contempt of the Court's order to maintain the matters exchanged during the mediation process confidential.

In the R&R, the Magistrate Judge provides a thorough analysis of Olmar López-Vidal's arguments challenging the validity of the SAR. However, such an analysis is beyond the scope of the requested relief for the Petition for Contempt Order. The only order given by the Court which the López Group have violated is that of maintaining strict confidentiality in the mediation process. As such, discussion of whether the arguments in the complaint filed in the Commonwealth Action are valid go beyond what is necessary to respond to the Movant Settling Parties' request. The Court will

Civil No. 22—1190 (GMM)
Page -27-

therefore not incorporate the analysis conducted by the Magistrate Judge as to the validity of the SAR into this order.[3]

### 3. Monetary Sanctions are Appropriate for Defendants' Contempt.

The Court now addresses the appropriate sanctions to be awarded for the finding of contempt against the López Group for violation of the Magistrate Judge's order to maintain the matters exchanged during the mediation process confidential. The Court has broad discretion in determining the appropriate coercive remedy. *See* Brown v. Colegio, 765 F.Supp.2d 133, 138 (D.P.R. 2011) (*citing* Goya, 290 F.3d at 21).

When, with the aid of their attorneys, the López Group violated the Court's order of confidentiality, it simultaneously made public a document containing sensitive company information detailing the procedure for VRM Penzini's acquisition of all 100% of GFC's membership units. The Court acknowledges that Plaintiffs have incurred in significant costs and time litigating their Motion for Contempt and that all parties have also collectively invested many efforts to respond to it. Although a sanction of attorney's fees could have been warranted here, the Court has decided not to impose this sanction at this time. It is within the Court's

---

[3] Accordingly, the objections to the R&R filed by Olmar López-Vidal at Docket No. 558 in response to the Magistrate Judge's analysis of the merits of the arguments in the Commonwealth Action or the validity of the SAR are found to be outside the scope of the analysis necessary to resolve the Motion for Contempt Order.

discretion to fashion a sanction it deems most appropriate. The Court will impose sanctions to "ensure compliance with the Court's orders and at the same time correct some of the damage done by their violations." Id. at 140. Thus, the Court REJECTS the Magistrate Judge's recommendation for a sanction of attorney's fees and instead, imposes a monetary sanction of $5,000 each to Olmar López-Gómez and Olmar López-Vidal.[4]

Some of the Movant Settling Parties have requested sanctions to the tune of forty million dollars. See (Docket Nos. 335 at X; 457 at 17, lines 5-16). Others place the figure at one hundred thirty-nine million dollars. See (Docket No. 496 at 3; 10-11). However, insufficient evidence has been presented for the Court to conclude that the damages suffered because of disobedience to the Court's confidentiality order reach those proportions. The Court has not found the López Group in contempt of any orders with respect to compliance with the drag-along provisions to the MIPAs or orders to desist from the Commonwealth Action to which they refused to comply. As such, it is not appropriate for this Court to issue sanctions for a violation of orders it did not give. The Court agrees with the Magistrate Judge that there is a subtle but

---

[4] The Court's decision to decline to impose attorney's fees at this time, does not signify that the Court condones the López Group's behavior, as it was clearly obstructive and inappropriate. The López Group and their counsel should consider any leniency exhibited by the Court on this occasion as a singular occurrence and they are forewarned that any similar conduct in the future will imply more severe sanctions.

Civil No. 22—1190 (GMM)
Page -29-

important distinction between those repercussions that can be
attributed to the filing of the Commonwealth Action and the
consequences that are triggered by the fact that the Commonwealth
Action publicly divulged certain confidential information without
authorization.

Furthermore, Olmar López-Vidal is ordered to request the
Commonwealth Court to place the Letter of Intent dated May 16,
2023, under seal, if he has not already done so.

B.    <u>Injunctive Relief for Collateral Attack</u>

1.    <u>An Injunction Against a Collateral Attack is Not
Appropriate.</u>

Movant Settling Parties have also requested the Court
exercise its power under the All Writs Act to enjoin Olmar López-
Vidal from moving forward with his "collateral attack to the
proceedings in the instant case and the Settlement Agreement." *See*
(Docket No. 295 at 8; 11). However, an injunction upon the
Commonwealth Court or Olmar López-Vidal himself will not revive
the possibility of the transaction contemplated in the SAR becoming
viable. Movant Settling Parties agree that the deal is now dead.
For example, Gregory Boyd and Jonathan Lassers state that "[s]ince
the Settlement Agreement and Release is no longer valid or
enforceable due to the Lopezes' successful efforts to destroy it,
Plaintiffs are amenable to negotiating a different resolution to
the case." (Docket No. 496 at 2-3, ¶4). CDVCA and PRFG do not

Civil No. 22—1190 (GMM)
Page -30-

disagree in this regard with Plaintiff's view on the current state

of the SAR:

> [T]he resolution of the Motion for Contempt will not
> result in the dismissal of this action, and because the
> Settlement Agreement reached during the mediation
> elapsed by its own terms without the parties thereto
> being able to consummate the transactions contemplated
> thereunder (due exclusively to the fault of codefendants
> Olmar López Gómez and Olmar López-Vidal), there is no
> agreement to be salvaged at this point.

(Docket No. 523 at 1, ¶2). In a separate filing, Semillero Partners

also expressed agreement: "[a]s Plaintiffs aptly describe it,

Defendant Olmar López [Vidal] 'destroyed the settlement agreement"

(Docket No. 510 at 2). The Court finds there remains no threat to

the "collateral attack" on these proceedings as the SAR is no

longer viable, and thus deploying its injunctive powers under the

All Writs Act is unnecessary.

    2.   <u>Preventing the López Group from Mounting a Defense
is Not Appropriate.</u>

In their objection to the R&R, Gregory Boyd and Jonathan

Lassers ask the Court to exercise its authority under All Writs

Act to prohibit the López Group from presenting any defense to the

claims made against them as punishment for their actions. The Court

declines to take such an action as it goes far beyond what is

"necessary or appropriate" in aid of our jurisdiction. 28 U.S.C.

§ 1651.

Civil No. 22—1190 (GMM)
Page -31-

IV.   <u>CONCLUSION</u>

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation as amended. Thus, *Urgent Petition for Entry of Contempt Order* filed at Docket No. 295 **GRANTED IN PART** and **DENIED IN PART**.

- Olmar López-Vidal and Olmar López-Gómez shall pay a monetary sanction to the Court in the amount of $5,000 each, to be deposited in Clerk's Office **on or before February 18, 2025.**

- Olmar López-Vidal is ordered to request the Commonwealth Court to place the Letter of Intent dated May 16, 2023, under seal, if he has not already done so, on or before **February 18, 2025.**

IT IS SO ORDERED

In San Juan, Puerto Rico, February 10, 2025.

                              s/ Gina R. Méndez-Miró
                              GINA R. MÉNDEZ-MIRÓ
                              United States District Judge