**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

Gregory Boyd, et al.,

Plaintiffs,

v.

Olmar López-Vidal, et al.,

Defendants.

**Civil No. 22-1190 (GMM)**

**OPINION AND ORDER**

Before the Court is a *Motion to Enforce Mediated Settlement Agreement* ("Motion to Enforce") by Joval Rodríguez, Stephanie Cummings, and their Conjugal Partnership ("Rodríguez Parties") filed at Docket No. 553. Plaintiffs Gregory Boyd and Jonathan Lassers ("Plaintiffs") filed their *Opposition to Motion to Compel* ("Opposition") at Docket No. 562. The Rodríguez Parties filed their *Reply to Plaintiff's Opposition to Motion to Enforce Mediated Settlement Agreement* ("Reply") at Docket No. 576.

The relevant background to this motion has been extensively discussed in the Court's *Opinion and Order* at Docket No. 590, regarding Plaintiffs' and other Settling Parties' *Urgent Motion for Entry of Contempt Order* filed at Docket No. 295. Thus, the Court will not repeat the full procedural history. The agreement and controversy giving rise to the Motion to Enforce is a mediated Settlement Agreement and Release ("SAR") in which the Plaintiffs agreed to release some, but not all, defendants in the case:

Community Development Venture Capital Alliance ("CDVCA"); Puerto Rico Fund for Growth ("PRFG"); Alexander Borschow; Mariella Danspeckgruber; the Conjugal Partnership Borschow-Danspeckgruber; Semillero Partners ("Semillero Parties"); Joval Rodríguez; Stephanie Cummings; the Conjugal Partnership Rodríguez-Cummings ("Rodríguez Parties"); Banco Popular de Puerto Rico ("BPPR") (collectively, "Settling Defendants"). *See* (Docket No. 349-1). The SAR contemplates a "Contemporaneous Transaction" which was negotiated through court-assisted mediation with Magistrate Judge Marcos E. López ("Magistrate Judge López"). *See* (id. at 6-7).

Although the Contemporaneous Transaction ultimately did not take place, the Rodríguez Parties request the Court order Plaintiffs to comply with the release provisions of the SAR as to them for two reasons: 1) regardless of whether the Contemporaneous Transaction provision can be enforced by the Court, the severability clause in the SAR empowers the Court to enforce any other valid provisions, including the release provision; and 2) because the Rodríguez Parties fulfilled all obligations under the SAR and no additional actions are required of them, Plaintiffs are obligated to dismiss all claims against them. *See* (Docket No. 553). Plaintiffs argue that without the completion of the Contemporaneous Transaction, the SAR is unenforceable in its entirety. *See* (Docket Nos. 562; 434).

## I. APPLICABLE LAW

A Court has authority to enforce a settlement agreement reached in the case it presides over. *See* Mathewson Corp. v. Allied Marine Indus., Inc., 827 F.2d 850, 852–53 (1st Cir. 1987). A party to a settlement agreement may seek to enforce the agreement's terms when the other party reneges. *See* id.

Where, as here, the underlying cause of action is federal, a motion to enforce a settlement agreement generally "is determined in accordance with federal law." Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999); *see also* Mathewson Corp., 827 F.2d at 853 n.3. The First Circuit has explained that when the terms of the contract are governed by federal common law, courts "are guided by 'common-sense canons of contract interpretation.'" Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995) (*quoting* Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir.1989). State Law, however, may serve as an appropriate supplement to sources of federal common law. *See* Rodríguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580, 585 (1st Cir. 1993) ("Because state law provides the richest source of law of contract interpretation, we have incorporated state law principles in the process of developing a body of federal common law." *quoting* Wickman v. Northwestern Nat'l Ins. Co., 908 F.2d 1077, 1084 (1st Cir. 1990)).

One key cannon of interpretation is reading unambiguous contract language in accordance with its plain and ordinary meaning. *See* Smart, 70 F.3d at 178. "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed. If the words should appear contrary to the evident intention of the contracting parties, the intention shall prevail." P.R. Laws Ann. tit. 31, § 3471 (repealed in 2020 and replaced with P.R. Laws Ann. tit. 31, § 6342(b)).[1] The First Circuit has consistently stated that courts should enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties. Borschow Hosp. & Medical v. Castillo, 96 F.3d. at 15 (1st Cir. 1996); Hopgood v. Merrill Lynch, Pierce, Fenner & Smith, 839 F.Supp. at 104 (D.P.R.1993) (*citing* Marina Industrial., Inc. v. Brown Boveri Corp., 114 P.R. Dec. 64, 72 (1983)).

[1] "The fact that Puerto Rico's parol evidence rule (which -broadly speaking- barred consideration of extrinsic evidence to an unambiguous contract) has been repealed does not impact our caselaw either because our "decisions [that] make it clear that [the Puerto Rico Civil Code provisions] preclude[ ] consideration of 'extrinsic evidence to vary the express, clear, and unambiguous terms of a contract' " "did not rely exclusively on the parol evidence rule."" Bd. of Trustees as trustees of ILA Prssa Pension Fund v. ILA Loc. 1740, AFL-CIO, No. 22-1591, 2024 WL 3900001, at *3 n.10 (1st Cir. Aug. 22, 2024) (*citing* IOM Corp. v. Brown Forman Corp., 627 F.3d 440, 448 n.9 (1st Cir. 2010)).

Accordingly, a Court need only turn to extrinsic evidence to evaluate the intent of the parties if the language of the agreement is ambiguous, or "inconsistent on [its] face or where the phraseology can support reasonable differences of opinion as to the meaning of the words employed and obligations undertaken." Smart, 70 F.3d at 178 (*quoting* Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1083 (1st Cir.1989)).

If necessary due to ambiguous contractual terms, the Court will assess the intent of the parties through their objective manifestations. *See* McCarthy v. Azure, 22 F.3d 351, 362 (1st Cir. 1994). "Parties do not become contractually bound until they mutually assent to bind themselves to an agreement. Courts determine that mutual assent, not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do." Salem Laundry Co. v. New Eng. Teamsters & Trucking Indus. Pension Fund, 829 F.2d 278, 280 (1st Cir. 1987) (citation omitted) (*citing* Williston on Contracts § 18, at 32 (3d ed. 1954)); *see also* Mathewson Corp., 827 F.2d at 853 (describing the "established principle that 'contracts depend on objective manifestations of consent and not on uncommunicated subjective expectations[.]'") (*quoting* Bushkin Assocs., Inc. v. Raytheon Co., 815 F.2d 142, 146 (1st Cir. 1987)).

Under federal common law and the laws of Puerto Rico, a contract should be construed together to find a coherent whole. *See* Amyndas Pharms., S.A. v. Zealand Pharma A/S, 48 F.4th 18, 31 (1st Cir. 2022) ("an inquiring court must avoid tunnel vision: instead of focusing myopically on individual words, it must consider contractual provisions within the context of the contract as a whole." (*citing* Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 17 (1st Cir. 2009)); Silvas v. Hilton Int'l of Puerto Rico, LLC, No. CV 21-1597 (RAM), 2024 WL 404951 (D.P.R. Feb. 2, 2024)("Article 1237 of the prior Puerto Rico Civil Code further provides that '[t]he stipulations of a contract should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together.'" *quoting* P.R. Laws Ann. tit. 31, § 3475 (1930); *citing* P.R. Laws Ann. tit. 31, § 6344 (2020) (Article 356 of the amended Puerto Rico Civil Code)).

## II. ANALYSIS

The Rodríguez Parties argue that based on the following provisions of the SAR, the Court should order Plaintiffs to release them from the litigation and dismiss all claims against them:

> 2. Dismissal with Prejudice. Pursuant to the agreements reached during the Mediation Session of May 19, 2023 held before Magistrate Judge Marcos E. López, Plaintiffs agree to file or cause to be filed a Notice of Dismissal with Prejudice of the

> Litigation against the Companies and the Settling Defendants, as well as all Claims brought on a derivative basis on behalf of the Companies. The dismissal shall be with prejudice, without the imposition of costs or attorneys' fees. Such Notice should be filed within ninety (90) days of the Effective Date and in no event later than October 18, 2023. By such date, Plaintiffs further agree to file or cause to be filed any other motion or document to the extent required by the Court or otherwise necessary to ensure immediate dismissal with prejudice of (1) the Derivative Claims and (2) the Direct Claims against the Settling Defendants and the Companies, but not as to any Defendant that is not a party to this agreement. Pending the filing of the Notice of Dismissal and any other dismissal documents, the Litigation shall remain stayed.

(Docket No. 349-1 at 4).[2]

> 3. Release. Plaintiffs, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the Companies, the Settling Defendants and VRM Penzini, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers,

[2] On October 18, 2023, Section 2 of the SAR was amended to delete the date of "October 18, 2023" and to insert in its place the date of "December 1, 2023". *See* (Docket No. 349-2).

> representatives, assigns, and successors m interest, and all persons acting by, through, under, or in concert with them, and each of them, from all manner of actions, suits, proceedings, and cause or causes of action, in law or in equity, whether foreseen or unforeseen, matured or not, known or unknown, accrued or not accrued, direct or indirect, debts, assessments, dues, claims, losses, damages, judgments, executions, defaults, covenants, contracts, controversies, agreements, promises, attorneys' fees, costs, interest payments and expenses, accounts, bills, variances, trespasses, assignments, notes, releases, rights, liabilities, obligations and demands of any kind and any nature whatsoever, which Plaintiffs have, or may have had, against Companies, the Settling Defendants and VRM Penzini, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions relating to or arising from the Claims. Plaintiffs do not dismiss any claims against the defendants that are not parties to this agreement.

(Docket No. 349-1 at 4-5).

> 9. <u>Contemporaneous Transactions and Miscellaneous Terms</u>. A. Contemporaneously with the negotiation and execution of this Agreement, Plaintiffs, Semillero, CDVCA, and PRFG, as members of GFC, agreed to sell their respective ownership interests in GFC under the parameters of a non-binding Letter of Intent dated May 16, 2023 issued by VRM Penzini, subject to the negotiation and signing of the Closing Documents. Pursuant to agreements reached during the Mediation Session of May 19, 2023 before Magistrate Judge Marcos E. López, the terms and conditions of such transactions as to Semillero, CDVCA, and PRFG are set forth in purchase agreements that have already been executed. The terms and conditions of such transactions as to Plaintiffs will be set forth in purchase agreements to be signed as soon as possible before July 31, 2023, to be followed by Closing Documents that Plaintiffs, Semillero,

> CDVCA, PRFG, and VRM Penzini shall execute within no more than 90 days from the Effective Date, with best efforts to execute sooner.

(Docket No. 349-1 at 6).

> 17. Severability. If any one or more provisions of this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired; provided, however, that in such case the Parties will in good faith use their best efforts to achieve the purpose of the invalid provision by agreeing on a substitute provision that is legally enforceable.

(Docket No. 349-1 at 8).

A. Severability

First, the Rodríguez Parties contend that the SAR's severability clause empowers the Court to enforce any valid provisions to the exclusion of any provisions the Court finds are unenforceable. *See* (Docket No. 553 at 10-11). Although Plaintiffs presented no arguments to the contrary, the plain language of the severability clause prohibits the Court from agreeing with the Rodríguez Parties. The SAR's severability clause requires additional efforts by the parties to substitute any unenforceable provision with one that would be enforceable:

> 17. Severability. If any one or more provisions of this Agreement shall be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired; provided, **however,**

> **that in such case the Parties will in good faith use their best efforts to achieve the purpose of the invalid provision by agreeing on a substitute provision that is legally enforceable.**

(Docket No. 349-1 at 8) (emphasis added). The Court has seen no indication in the parties' filings or on the record that the parties have in good faith made their "best efforts to achieve the purpose of the invalid provision by agreeing on a substitute provision that is legally enforceable." The plain meaning of the severability clause indicates that the Court may not rely on it as a means to enforce the remainder of the agreement. *See* McCarthy v. Azure, 22 F.3d 351, 358 (1st Cir. 1994) (*citing* C & M Realty Trust v. Wiedenkeller, 133 N.H. 470, 578 A.2d 354, 357 (1990) (declaring that a court's role is to interpret contracts in accordance with the parties' intent discernible at the time of agreement, as measured by objective criteria)). Since, as the Rodríguez Parties themselves admit, the Contemporaneous Transaction was frustrated, without a showing that the parties agreed on a substitute provision, the Court is not at liberty to enforce the remainder of the agreement based on the unambiguous language of the SAR's severability clause.

B. Release and Dismissal

In any event, the Rodríguez Parties further argue that, regardless of whether the Contemporaneous Transaction could be executed, the SAR is valid and enforceable as to them because there

was nothing else for them to do to fulfill their side of the bargain. *See* (Docket No. 553 at 12). On the other hand, Plaintiffs argue that although the Rodríguez Parties did not have independent obligations under the SAR, the release of *all* Settling Defendants was contingent on the successful execution of the Contemporaneous Transaction. In other words, the execution of the Contemporaneous Transaction was an essential term of the settlement agreement. *See* (Docket Nos. 562; 434).

The Court finds the SAR's language to be unambiguous. The plain and ordinary meaning of the terms in the context of the entire SAR leads the Court to conclude that release of the Rodríguez Parties from the litigation, as with the release of all Settling Defendants, first required the successful execution of the Contemporaneous Transaction.

First, the SAR states Plaintiffs agreed to dismiss all claims against Settling Defendants, including the Rodríguez Parties, with prejudice. *See* (Docket No. 349-1 at 4-5). Moreover, nowhere in the SAR are the Rodríguez Parties distinguished or set apart in any way from the other Settling Defendants. Second, the SAR included a provision for a "Contemporaneous Transaction" which was also negotiated through the same process of Court assisted mediation with Magistrate Judge Marcos E. Lopez. *See* (Docket Nos. 349-1 at 6). A review of clauses 9 and 10, together with other clauses of

the SAR reflects, that they contain the principal object and consideration of this contract. Without those clauses, the contract would have no object nor consideration, and Plaintiffs would therefore have no reason to release the defendants included as Settling Parties. Third, there are no other terms in the SAR that indicate other consideration offered by any Settling Defendants which would give Plaintiff's cause to release any of them from the litigation.

Federal common law of contracts warns against "tunnel vision" and urges the Court to interpret the contract as a cohesive whole. *See* Amyndas Pharms, 48 F.4th at 31. In doing so, the Court is convinced the SAR is reasonably susceptible to only one interpretation: the Plaintiffs agreed to release *all* the Settling Defendants, only if *all* terms of the SAR were executed. Put differently, if the Contemporaneous Transaction —action that would have triggered a release and dismissal for all Settling Defendants— was not, and could not, be completed, the SAR cannot be enforced. Thus, when the Contemporaneous Transaction was ultimately frustrated by the actions of non-settling co-defendants Olmar López-Vidal and Olmar López-Gómez, the SAR itself became unenforceable in its entirety.

At first glance, it may seem like the Rodríguez Parties make a reasonable request, and it may appear unfair not to libertate

them from this suit, since they seem to have complied with their obligations. Also, the failure to execute the Contemporaneous Transaction, and ultimately the agreement, is not attributable to them. However, the black letter of the SAR and the law oblige the Court to uphold the contract as it was written. Releasing the Rodríguez Parties from this litigation is not in alignment with the unambiguous text of the SAR. The parties engaged in a good faith negotiation and reached a mutually agreed upon resolution, which unfortunately was not able to come to fruition. The Court cannot now re-write that agreement.

## III. CONCLUSION

For the stated reasons, the *Motion to Enforce Mediated Settlement Agreement* filed at Docket No. 553 is **DENIED**.

IT IS SO ORDERED

In San Juan, Puerto Rico, February 10, 2025.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE