**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF PUERTO RICO**

Gregory Boyd, et al., Plaintiffs,

v.

Olmar López-Vidal, et al., Defendants.

Civil No.: 22-cv-1190 (GMM) (MEL)

Jury Trial Demanded

---

**MOTION FOR RECONSIDERATION OF THE COURT'S MEMORANDUM AND ORDER (DOCKET NO. 800)**

---

**TABLE OF CONTENTS**

Table of Contents ................................................................................................ 2

TABLE OF AUTHORITIES ................................................................................ 3

TO THE HONORABLE COURT: ....................................................................... 5

I.         INTRODUCTION ................................................................................ 5

II.        MAJORITY MEMBERS' AUTHORITY UNDER THE OPERATING

AGREEMENT .................................................................................................... 7

III.       FIDUCIARY BREACHES ARE ULTA VIRES UNDER PUERTO RICO LAW

DESPITE ANY OPERATING AGREEMENT AUTHORIZATION ............................ 9

IV.        BOARD INCAPACITY DUE TO RICO VIOLATIONS .................................... 15

   A. The Board's Structure Prevents Accountability ..................................... 15

   D. Director-by-Director *Zuckerberg* Analysis[2] ........................................... 16

V.         THIS COURT'S EQUITABLE POWERS ........................................... 17

VI.        Vi. CONFLICTS OF INTEREST AND PROFESSIONAL ETHICS ................. 18

VII.       CONCLUSION ................................................................................. 20

**TABLE OF AUTHORITIES**

**CASES**

*Allison v. Eriksson*, 479 Mass. 626, 98 N.E.3d 143 (2018) ....................................................11, 18

*Auriga Capital Corp. v. Gatz Properties, LLC*, 59 A.3d 1206 (Del. 2012) .................9, 10, 11, 17

*Demalous v. Demalous*, 428 Mass. 555, 703 N.E.2d 1149 (1998) ...............................................11

*In re Lyman-Cutler, LLC,* 632 Bankr. Court 355, 416 (D.Mass. 2021)…………………....9, 16

*In re Fox Corp. Derivative Litig.*, C.A. No. 2023-0418-JTL (Del. Ch. Dec. 27, 2023) ...............16

*In re PHC, Inc., Shareholder Litigation*, 894 F.3d 419, 435 (1st Cir. 2018) ..........................11,16

*Kyle v. Apollomax, LLC,* 987 F.Supp. 519, 524 (D.Del. 2013)…………………………………11

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ..............................................................13, 17

*UnitedHealth Group Inc. v. Zuckerberg*, 2021 WL 4437885 (Del. Ch. Sept. 23, 2021) ………..16

*United Food and Commercial Workers Union v. Zuckerberg*, 262 A.3d 1034 (Del. 2021) ..15, 16

**STATUTES**

14 L.P.R.A. § 3965.............................................................................................10, 11, 13-17, 20

14 L.P.R.A. § 3994........................................................................................................10, 11

14 L.P.R.A. § 4003.................................................................................................................10

18 U.S.C. § 1341..................................................................................................................14

18 U.S.C. § 1964(c)................................................................................................................13

Del. Code Ann. tit. 8, § 141............................................................................................13, 14, 20

Del. Code Ann. tit. 8, § 144............................................................................................13, 14, 16

**RULES**

ABA Model Rule 1.7.............................................................................................................18. 19

ABA Model Rule 1.13...................................................................................................................18, 19

**TO THE HONORABLE COURT:**

**COME NOW** Gregory Boyd and Jonathan Lassers on their own behalf, and derivatively on behalf of GFC Holdings, LLC and Biomass Green Fuels, LLC, through undersigned counsel and very respectfully state and pray:

**INTRODUCTION**

The Plaintiffs respectfully submit this Motion for Reconsideration of this Court's denial of their Motion to Withdraw the Motion to Dismiss filed by GFC Holdings, LLC ("GFC") and Biomass Green Fuels, LLC ("BGF") (collectively, the "Companies") in its Memorandum and Order dated August 12, 2025 ("Order"). Plaintiffs seek to clarify both their position and the procedural posture of this case. First, the Companies' circumstances have changed vastly since the Plaintiffs filed the Second Amended Complaint. At that point, the Board of Managers controlled a going concern, which Plaintiffs sought to rid of the criminal enterprise being operated by that Board. The current situation is quite different. The current situation involves the members of the Companies' Board of Managers breaching their fiduciary duties to the Companies and to the majority of the Companies' owners in order to enrich themselves. Every Court that has considered such conduct has ruled that such breaches warrant equitable relief on behalf of the Companies and their owners to rescind the conduct breaching the fiduciary duties of the miscreants.

We do not have to present the current situation of the companies, as Attorney Roberto Abesada has already done so. On July 10, 2025, Atty. Abesada Agüet informed the Superior Court of San Juan that GFC Holdings, LLC is not operating and has no assets. *See* Exhibit 1. Just as Semillero, CDCVA, and Olmar Lopez Gomez acted in their self-interest and to the detriment of the Companies from the beginning of the operations of the Companies, they have continued to do

so. In January of this year, they, together with VRM Penzini, struck the final blow and improperly liquidated the Companies for their own benefits.

It is Atty. Abesada, who has a conflict with the Companies. He is not working in their best interest, but instead to conceal and justify the self-dealing of the Board of Managers. As set forth below, his conflict with the Companies' best interests is further demonstrated by his failure to represent them adequately in at least three different cases in addition to this one.

Those Defendants illegally sold the Companies' assets to Humacao RNG, a company majority owned by insider VRM Penzini. They did so when there was an existing offer from the Cambrian Group that would have paid off 75% of the outstanding debt, finished the biorefinery and allowed the owners of the Companies to retain a 40% interest. Instead, per Attorney Abesada, the Companies now have no assets and no operations, which begs the question of who is paying Atty. Abesada to cover up the theft of all of GFC/BGF's assets.

This Motion for Reconsideration asks this Court to hold that the Majority Members' June 13, 2025, Written Consent ("Written Consent") validly authorizes appointing Becker & Vissepo as counsel; removing Attorney Abesada; withdrawing the Companies' motion to dismiss and joining the Companies as plaintiffs. If the majority of the members still are unable to convince this Court that the current Operating Agreement affords them the authority to make this decision, those members beseech this Court to consider the path that the First Circuit has endorsed: simply rescinding the Board of Managers' decision as made in breach of their fiduciary duties to the Companies.

## II.    MAJORITY MEMBERS' AUTHORITY UNDER THE OPERATING AGREEMENT

The Order recognizes Majority Members' "certain limited rights... specifically reserved... elsewhere in the Operating Agreement" (Order at 13), limited "except as otherwise expressly required under this Agreement or the Act" (quoting OA Section 6.1(a)), and in "particular circumstances in which the majority members may act by Member Resolution... to the extent those rights are clearly stated" (Order at 13-14).

These rights are set forth in Section 3.2:

Subject to any protective provisions in favor of the holders of the Series A Preferred Units, the Members may, subject to Section 4.2(j), act by written consent by the Majority Approval of the Members (a Member Resolution)

The Operating Agreement Section 3.2 reserves authority for the majority of members in non-protected matters.

No protective provisions apply in Section 4.2(j) to appoint counsel or manage litigation.

On August 25, 2023, the Second Amendment to the 2nd Restated Operating Agreement, Section 4.2 was modified so that Preferred and Common Units vote together as a single class:

The holders of the Series A Preferred Unit shall vote together with the holders of Common Units on an as-converted basis, and not as a separate class...

That amendment allowed both preferred and common unit holders to act together, without discrimination, to approve a Settlement Agreement. Notwithstanding the elimination of dual class voting, the Majority Members have, from the outset, been empowered to act by written consent on any matter not reserved for the Preferred unit holders in 4.2(j) and the Board in Section 6. Section

7

6 of the Operating Agreement does not vest authority in the Board to appoint counsel or manage litigation, particularly after the liquidation.

Below are other key elements the GFC Operating Agreement *vis a vis* this situation:

"Deemed Liquidation Event means a merger or consolidation (other than one in which equity holders of the Company own a majority by voting power of the outstanding shares or membership interest of the surviving or acquiring entity) and a sale, lease, transfer, exclusive license or other **disposition of all or substantially all of the assets of the Company**." [Emphasis Added]

Section 9.1 Dissolution. "The Company will be dissolved upon the earliest to occur of the following events (each such event is referred to as a "Dissolution Event"): the **Members unanimously vote** in favor of the liquidation and dissolution of the Company; or any other event that, under the Act, would cause the Company's dissolution." [Emphasis Added]

No unanimous vote ever occurred. The sale of the company's assets under the Asset Acquisition Agreement (AAA) was an *ultra vires* and fraudulent act that should never have allowed the company to be liquidated by a Board of self-dealing actors.

Plaintiffs control 55.468% of GFC voting units on an as-converted basis, as detailed in Exhibit A to the Written Consent (Docket No. 750-1 at 5), and exercised this authority through the Written Consent dated June 13, 2025. This majority provides authority to direct corporate action, including litigation decisions, when conflicts of interest compromise the Board.

## III.    FIDUCIARY BREACHES ARE ULTA VIRES UNDER PUERTO RICO LAW DESPITE ANY OPERATING AGREEMENT AUTHORIZATION

VRM Penzini used the aforementioned amendment to Section 4.2 of  the Operating Agreement to buy the vote of each of the approving Board Members in an attempt to validate the improper liquidation and sale of the company's assets. Each member who voted for the liquidation received compensation. Each member who opposed the liquidation received nothing. Because each member's vote was tainted by the breach of each member's fiduciary duty, the asset sale was *ultra vires. In re Lyman-Cutler, LLC,* 632 Bankr. Court 355, 416 (D.Mass. 2021) (Once a court determines that the managers of an LLC have breached their fiduciary duty, "the appropriate remedy is to rescind or avoid [the contract] in its entirety.") *Id.* at 418.

The Board's conflicts— its self-dealing in the Asset Acquisition Agreement and liquidation without unanimous approval—voided its authority. *Auriga Capital Corp. v. Gatz Properties, LLC*, 40 A.3d 839, 843, 850 (Del. Ch. 2012), *aff'd*, *sub. nom. Gatz Properties, LLC v. Auriga Capital Corp.,* 59 A.3d 1206 (Del. 2013). In *Auriga Capital Corp.*, the Delaware Chancery Court held that LLC managers owe default fiduciary duties of loyalty and care under equity principles and statutory defaults, unless the LLC agreement explicitly displaces them. *Id.* at 849-50; *see also* 6 Del. C. § 18-1104. The Chancery Court found breaches of such duties where the majority manager rejected a favorable third-party offer; misled minority members; and orchestrated a sham auction to acquire assets at a discount price, enriching himself at the expense of the LLC and its minority members. *Auriga Capital*, 40 A.3d at 843, 856-57, 870-71. These actions violated the duty of loyalty and a contractual "entire fairness" standard requiring fair dealing and fair price in affiliate transactions. *Id.* at 851-52, 870. The Delaware Supreme Court affirmed on contractual grounds, upholding findings of bad faith and self-dealing, while noting

that default fiduciary duties apply absent contrary provisions, and deeming the Chancery Court's broader discussion on defaults as dicta. *Gatz Properties, LLC v. Auriga Capital Corp.*, 59 A.3d 1206, 1213-14, 1216-17 (Del. 2013).

Under Puerto Rico law, which expressly imposes fiduciary duties on LLC members and managers unless modified in the operating agreement, the Board members' breaches forfeit Board authority. *See* P.R. Laws Ann. tit. 14, § 3963(a)-(b) (providing that members and managers owe duties of loyalty and care, including acting in the best interest of the LLC, avoiding conflicts, and not competing; duties may be limited but not eliminated for loyalty or bad faith). *Id.* § 3565 (requiring abstention or disclosure and approval in conflicted transactions for directors, applicable to LLCs by extension). Notably, Atty. Abesada has never argued that the Board of Managers' acted in good faith in liquidating the company for their personal benefit.

Pursuant to 14 L.P.R.A. § 4003, members may act derivatively if managers refuse to act due to conflicts or futility; under § 3994, member consent can override management action in certain governance matters, but more critically, § 3965 imposes fiduciary duties of loyalty and care on managers, which persist unless explicitly waived in the OA (which they are not).

Puerto Rico's Limited Liability Company Act (14 L.P.R.A. §§ 3951 et seq.),, shares significant structural similarities with Delaware's Limited Liability Company Act (6 Del. C. §§ 18-101 et seq.)[1], particularly in governance provisions allowing for member-managed or manager-managed structures, protections of member rights through flexible operating agreements, imposition of fiduciary duties of loyalty and care on managers unless modified (mirroring 6 Del.

C. § 18-1101 via 14 L.P.R.A. § 3965), and creditor remedies limited to charging orders without foreclosure on membership interests (analogous to 6 Del. C. § 18-703 under 14 L.P.R.A. § 3994).[1]

The *Gatz* decisions led to a 2013 amendment to 6 Del. C. § 18-1104, which explicitly confirmed that "in any case not provided for in this chapter, the rules of law and equity, including the rules of law and equity relating to fiduciary duties and the law merchant, shall govern." [2] Del. H.B. 126, 147th Gen. Assemb., § 8 (2013) (effective Aug. 1, 2013). This amendment resolved ambiguity by incorporating default fiduciary duties of loyalty and care via equity, unless modified, reinforcing contractual freedom while providing clarity. *See id.* (synopsis) (noting that absent contrary provisions, "these default fiduciary duties would apply as a matter of equity," and the agreement may not eliminate core elements of loyalty like good faith and fair dealing).  Cases post *Gatz* confirm these defaults unless disclaimed. *See Kyle v. Apollomax, LLC,* 987 F.Supp. 519, 524 (D.Del. 2013), *Cf. Allison v. Ericksson,* 479 Mass. 626 (2018) (Remedies where breach of fiduciary duty occurs are not constrained to the statutory right of distribution, and the trial court was within its discretion in fashioning an equitable remedy that amended the operating agreement.)

The First Circuit has cited the *Allison* case with approval. "The hallmark of equitable relief is its protean nature and - within wide limits – a court sitting in equity [as this Honorable Court sits] may tailor the relief to fit the circumstances of the particular court." *In re PHC, Inc., Shareholder Litigation,* 894 F.3d 419, 435 (1st Cir. 2018), *citing Allison,* 98 N.E. at 154; *Demalous v. Demalous,* 428 Mass. 555, 703 N.E. 2d 1149, 1169 (1998). The *PHC* Court continued: "Within this remedial realm, it is standard fare for a court to fashion remedies that deny a breaching fiduciary undue gain received by virtue of this position." *In re PHC* at 435. Here, Plaintiffs ask

---

[1]  Indeed, just as in *In re PHC, Inc. Stockholder Litigation, infra,* at 429. the "sockdolager" here is that Puerto Rico, as does Massachusetts, looks to Delaware for interpretation of its corporate law. *Id.* at 435.

this Court to find a remedy that they understand the Operating Agreement authorizes. Plaintiffs recognize that this Court has already resolved that the Operating Agreement authorizes no such thing, but that is not the end of the matter.

The Board of Managers has breached its fiduciary duties. They have acted in their own best interests by fraudulently pocketing money from the liquidation and not the best interests of the Companies. They have hired counsel who fails to defend the Companies. They have directed such counsel to file a motion to dismiss the Second Amended Complaint in this case and to withdraw the Bank Holding Companies Act case against Banco Popular because *they* have agreed not to sue Banco Popular in the Asset Acquisition Agreement. *See* Exhibit 2, Sections 2.9 and 2.10 and Section 3(c) at 17.[2]  Under the Asset Acquisition Agreement, Banco Popular receives a release of all claims by the companies, to which the Plaintiffs did not agree. *See* Exhibit 2 at 17, Section 3(c). Banco Popular is not a party to the Asset Acquisition Agreement, yet it apparently inserted requirements on the Companies in the context of a liquidation that the members never unanimously

---

[2]   3.(c).Release of Banco Popular. Each of GFC and BGF hereby confirm and ratify their release of Banco Popular on behalf of themselves. their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing. affiliates, and assigns, and its and their past, present and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest and all persons acting by, through, under, or in concert with it, and each of them does hereby forever waive, release and discharge any and all claims (including without limitation, cross-claims, counterclaims, right to extinguish litigious credit, rights of setoff and recoupment), defenses, causes of action, demands, suits, costs, expenses and damages that it now has or hereafter may have, of whatsoever nature and kind, whether known or unknown, whether now existing or hereafter arising, whether arising at law or in equity (collectively, "Popular Claims"), against BPPR, its subsidiaries and affiliates, and each of their respective successors, assigns, officers. directors, employees, agents. attorneys and other representatives (collectively, the "Releasees"), based in whole or in part on facts, whether or not known, existing or occurring on or prior to the date of this Agreement, and agrees to hold the Releasees harmless from and against all such Popular Claims.

approved. The Board of Managers entered into that agreement knowing that the BHCA case could make the Companies whole. This action also breached their fiduciary duties to the Companies. The Board of Managers also directed counsel to seek the dismissal of this case because each of the members who voted in favor of the Asset Acquisition Agreement [which liquidated the Companies] is a Defendant in this case. Again, the Board of Managers acted in their own best interests, not those of the Companies.

Plaintiffs very respectfully ask this Court to approve the Members' Resolution because it is in the best interest of the Companies and to deem the Board of Managers' actions null and void because such actions are the product of their breaches of fiduciary duties.

The Board's conflicted approval (VRM as Board Member / Buyer affiliate) breached: Loyalty (§ 3965/Del. Code Ann. tit. 8, § 144[1])

- Undervalued sale as waste (§ 3965/Delaware common law)
- Ignored a better offer (for the second time[3]) as bad faith/oversight (§ 3965/Del. Code Ann. tit. 8, § 141)

Federal RICO law's broad remedial purpose under 18 U.S.C. § 1964(c) also supports overriding breaches of fiduciary duties, as the Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 49 (1985), held: "legitimate' enterprises neither enjoy an inherent incapacity for criminal activity nor immunity from its consequences. The Order's reliance on the OA's management vesting in the Board (Order at 15-16, quoting Section 6.1(a): "the full, absolute and

---

[3]  The Second Amended Complaint faults Alexander Borschow for "Refusing to eliminate conflicts of interest when he chose to vote for Semillero and CDVCA's $850,000 investment in GFC/BGF over a better offer since CDVCA is an investor in Semillero Partners and PRFG.  This was a vote for self-interest in breach of his fiduciary responsibility. Semillero (Alex Borschow) should have abstained from this vote." Docket 147, ¶728

exclusive right, power and authority to manage the Company is vested in... the Board of Managers") ignores Delaware corporate law and jurisprudence finding repeatedly that boards controlled by people who have breached their fiduciary duties in favor of self-interest have no authority manage the LLC. Oversight duties (Del. Code Ann. tit. 8, § 141 analog via § 3965 Bad faith (Del. Code Ann. tit. 8, § 141/§ 3965; 18 U.S.C. § 1341 mail fraud) Conflicts (Del. Code Ann. tit. 8, § 144/§ 3965).

While Puerto Rico maintains an independent statutory framework tailored to their jurisdiction, Delaware law serves as a persuasive authority and interpretive guide for LLC provisions, especially in areas of ambiguity or silence, such as management disputes and fiduciary breaches. This influence derives from the General Corporations Act of 2009 explicitly modeling itself after the Delaware General Corporation Law (DGCL), with its Statement of Motives declaring that "this Act is based on the General Corporation Law of Delaware, as amended through 2009" and that "judicial decisions from the state of Delaware interpreting said Law shall be highly persuasive and illustrative in the interpretation of this Act." Although this directive originates from the legislature rather than a direct Puerto Rico Supreme Court ruling, legal commentaries and practice guides extend its applicability to LLC matters given the shared statutory subtitle and policy objectives. Delaware law also applies to foreign Delaware LLCs registered to do business in Puerto Rico (14 L.P.R.A. §§ 4021-4029), reinforcing Delaware's governance role. Legal commentary consistently recommends Delaware law as the primary interpretative authority for Puerto Rico LLC governance disputes and Series LLC issues, providing clear and authoritative guidance for Puerto Rico LLC matters, especially in areas of ambiguity or dispute.

## IV.    BOARD INCAPACITY DUE TO RICO VIOLATIONS

The Board members' participation in the RICO enterprise—facilitating fraudulent asset transfers and self-dealing—renders it incapable of pursuing claims against itself and co-conspirators. As recognized in Delaware jurisprudence (influential under PR LLC law per 14 L.P.R.A. § 3965), boards compromised by conflicts lose governance protections.

### A. The Board's Structure Prevents Accountability

Indefinite Terms: OA Section 6.1(b) states that "Each Manager... shall hold office until a successor is elected and qualified or until such Manager's earlier death, resignation, expulsion, or removal." 2020 OA at 16-17

### B. Self-Investigation Impossibility

In September 2021, Semillero and CDCVA obtained additional Preferred units when Semillero and CDCVA voted to grant themselves additional units at a substantial discount to their value, despite another investor making a better offer. Docket 147 at ¶728. Unsurprisingly, those members never investigated that tainted acquisition.

In the Asset Acquisition Agreement, the Managers benefited (e.g., Alexander Borschow, whose Semillero Fund was paid $1,403,071.36, (Exhibit 2 at 51, 53) Ernesto Villarini, whose CDVCA $208,576 and PRFG was paid $528,526, (Exhibit 2 at 51) with Member López-Gómez receiving $230,804 for "International Technical Services Olmar Sr." for his vote (Exhibit 2 at 52). The Plaintiffs received nothing for the BGF/GFC assets valued at over $300 million. This self-dealing undermines the authority of the Board of Managers. *United Food & Com. Workers &*

*Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg,* 262 A.3d 1034, 1059 (Del. 2021)

### C. Universal Compromise

Every Board member either directly benefits or represents RICO defendants, as alleged in the Second Amended Complaint (Docket No. 147 at ¶¶ 7-11, detailing breaches of fiduciary duty under Count IX). The Order erred in upholding Board authority (Order at 19-20) without addressing these RICO-specific incapacities, where federal law preempts state governance norms to ensure enforcement. Moreover, VRM Penzini's dual role as 80% owner of Humacao RNG to whom the assets were sold, and as a Member and Board Member demonstrates breaches: conflicts (Del. Code Ann. tit. 8, § 144/§ 3965); "self-protection" (*Fox*); waste via $4.4M insider payouts (Delaware common law/§ 3965). *Cf. In re PHC, Inc.* at 431 ("where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts." *See also In re Lyman-Cutler* at 415.

### D. Director-by-Director *Zuckerberg* Analysis

The Delaware Supreme Court in *United Food and Commercial Workers Union v. Zuckerberg*, 262 A.3d 1034, 1048-49 (Del. 2021), established the controlling three-prong demand futility test under Rule 23.1, refining prior *Aronson* and *Rales* standards: whether directors (1) received material benefits, (2) face substantial liability, or (3) lack independence from interested parties. This serves as the foundational legal standard and controlling precedent for all Delaware demand futility analysis. The Delaware Chancery Court in *UnitedHealth Group Inc. v. Zuckerberg*, 2021 WL 4437885, at *8-12 (Del. Ch. Sept. 23, 2021), provides the practical

16

methodology for applying this framework in a fact-intensive director-by-director analysis, demonstrating how courts evaluate each prong to determine demand futility in specific factual circumstances. This division reflects judicial hierarchy (Supreme Court sets controlling law; Chancery Court applies it to facts) and doctrinal function (legal framework vs. practical application).

Applying the Supreme Court's three-prong demand futility framework to each board member demonstrates universal breach of fiduciary duty. The Delaware Chancery Court in *United Health Group Inc. v. Zuckerberg*, 2021 WL 4437885, at *8-12 (Del. Ch. Sept. 23, 2021), provides the methodological approach for this fact-intensive analysis, examining whether each director satisfies any of the three prongs and demonstrating how courts evaluate material benefits, substantial liability, and independence to determine breach of fiduciary duty when directors cannot to assess impartially derivative claims against themselves. Plaintiffs respectfully cite their analysis of each member in their Opposition to the Companies' Motion to Dismiss. Docket 803 at 10-12.

## V.    THIS COURT'S EQUITABLE POWERS

Federal courts wield broader equitable powers in RICO cases to enforce anti-racketeering laws, as *Sedima* mandates broad construction to "effectuate its remedial purpose,". Here, equity demands recognizing the Written Consent to prevent the Board's conflicts from extinguishing claims. Under 14 L.P.R.A. § 3965, fiduciary duties persist, and courts may intervene in shell LLCs post-liquidation (AAA at 1, transferring "all or some of the company's assets"). The Order's narrow OA reading (Order at 18-19) ignores equitable relief, as in *Auriga Capital Corp. v. Gatz Properties, LLC*, 59 A.3d 1206, 1218 (Del. 2012), where self-dealing invalidated a manager's asset sale. Just as "Gatz breached his fiduciary duties... by failing to negotiate in good faith.", the Board

17

of Managers here breached their fiduciary duties by committing all the predicate RICO felonies detailed in the Second Amended Complaint and subsequently by liquidating the Companies for their sole benefit and to the detriment of the Companies.

Similarly, *Allison v. Eriksson*, 479 Mass. 626, 636 (2018), affirmed remedies like OA reformation for bad-faith mergers: Equity here justifies overriding the Board's veto, and remedying breaches of fiduciary duties such as squashing the very litigation that can remedy the Companies' situation.

## VI.    CONFLICTS OF INTEREST AND PROFESSIONAL ETHICS

The Order devoted significant analysis to ABA Model Rules of Professional Conduct 1.7 (concurrent conflicts) and 1.13 (organization as client), finding a "significant risk" that Becker & Vissepo's proposed dual representation of Plaintiffs (Boyd and Lassers), and the Companies would be "materially limited by the lawyer's responsibilities to another client" due to documented adverse interests. Order at 9-11, citing realignment motions at Docket Nos. 590, 651; standing challenges; default motions. The Order documents the parties' adverse relationship (e.g., Companies' motions to dismiss derivative claims at Docket Nos. 651-653), concluding this history supports a conflict precluding representation without informed consent (Order at 10-11).

Respectfully, the Order misinterprets Becker-Vissepo's proposed representation of the Companies as inherently adverse to Boyd and Lassers. The interests of Boyd and Lassers are identical to those of the Companies: to benefit the Companies. There is no conflict of interest; there is a confluence of interest.  Boyd and Lassers seek to have GFC and BGF join Boyd and Lassers as co-plaintiffs in pursuing the wrongdoers, e.g., Banco Popular, Semillero, Accurate

Solutions, CDCVA, and George Economou, to recover the Companies' assets and funds, not to oppose them.

This alignment has been articulated from the outset: Becker-Vissepo, on behalf of Boyd and Lassers, sued on behalf of GFC and BGF in the original RICO Complaint filed April 25, 2022 (Docket No. 1 at 1: "Gregory Boyd... on behalf of GFC Holdings, LLC and Biomass Green Fuels, LLC"; ¶¶ 1-2: seeking to protect the Companies from fraud), and continued this in the Second Amended Complaint[4] filed January 31, 2023 (Docket No. 147 at 1: "Gregory Boyd... on behalf of Biomass Green Fuels, LLC and GFC Holdings, LLC"; ¶ 11: derivative claims for "misconduct" to recover assets). The goal has always been unified: to "protect the company and recover the assets" from the Board's breaches (e.g., AAA self-dealing).

Under Model Rule 1.7(a)(2), no concurrent conflict exists where there is no "significant risk" of material limitation, as interests here align in the joint pursuit of recovery. Rule 1.13(a) allows representation of an organization through its constituents (e.g., Majority Members) if there is no adversity. A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

No dual representation with Abesada is proposed; he represents the "wrongdoers" (conflicted Board/Preferred holders benefiting from the RICO predicate felonies and the AAA), not the Majority Members or Companies' best interests:

In addition to not conducting discovery in the ARMC case because the Companies "are not operating;" Abesada failed to appeal the Partial Summary Judgment in favor of BPPR against the

---

[4] The Amended Complaint was never filed because it was superseded.

Companies for $13,418,352.07; and failed to move lift the default judgment entered against the

Companies in favor of George Economou. *See* Exhibit 1.

Realigning the parties and counsel is not a conflict or ethics violation but a fiduciary

imperative under 14 L.P.R.A. § 3965 to remedy the conflicted Board's breaches. The Board's

conflicts demonstrate that Atty. Abesada is the attorney who is inescapably conflicted. (Del. Code

Ann. tit. 8, § 141/§ 3965).

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its Order

and grant the Motion to Appear on Behalf of GFC Holdings, LLC and Biomass Green Fuels,

LLC, authorize the Company to withdraw its Motion to Dismiss in this case, require Attorney

Roberto Abesada to withdraw forthwith from his representation of the Companies and such relief

as the Court deems just and proper. We further request that the Court grant us 30 days to file a

 third amended complaint, which will include the wrongdoings that have occurred since January

2023 and the companies' illegal liquidation.

Respectfully submitted in San Juan, Puerto Rico this 29th of August 2025

/s/ Jane A. Becker Whitaker
**JANE A. BECKER WHITAKER**
USDC No. 205110
Attorney for Plaintiffs
P.O. Box 023914
Urb. Baldrich, San Juan, PR 00902-3914
Tel: (787) 585-3824
Email: janebeckerwhitaker@gmail.com

/s/ Jean Paul Vissepó Garriga
**JEAN PAUL VISSEPÓ GARRIGA**
USDC No. 221504
Attorney for Plaintiffs

P.O. Box 367116
Urb. Baldrich, San Juan, PR 00936-7116
Tel: (787) 633-9601
Email: jp@vissepolaw.com

/s/ Luis E. Miñana
**LUIS E. MIÑANA, ESQ.**
USDC-PR No. 225608
Attorney for Plaintiffs
ESPADA, MIÑANA, & PEDROSA LAW OFFICES, PSC
123 Calle Manuel Domenech Altos
Urb. Baldrich, San Juan, PR 00918
Tel: (787) 758-1999
Email: minanalaw@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I have presented the foregoing to the Clerk of the Court

for filing and uploading to the CM/ECF system, which will notify all counsel of record.

/s/ Jane A. Becker Whitaker
**JANE A. BECKER WHITAKER**